UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

IN RE:  DONALD CHAD WAGER        Case No.:  3:23-bk-02788-BAJ
       SHELLEY JEAN WAGER,

       Chapter 11, Subchapter V

          Debtors.
_____/

Dated: February 11, 2024

**SUBCHAPTER V CHAPTER 11 PLAN OF REORGANIZATION**

     Donald Chad Wager and Shelley Jean Wager (the "Debtors") propose the following Plan of Reorganization (the "Plan") pursuant to section 1190 of subchapter V chapter 11, title 11 of the United States Bankruptcy Code.

     The following information is provided pursuant to the requirements of section 1190 of subtitle V of Chapter 11 of the Bankruptcy Code.  The actual terms for repayment are found in the Articles of the Plan which begin at page **4**.

## BRIEF HISTORY

     In October of 2018, Mr. and Mrs. Wager purchased a two barn poultry farm for egg production.  The farm is located on 41.1 acres in Bradford County, Florida.  At the time of the purchase, there were two poultry houses on the property.  The Debtors borrowed funds from Community State Bank, nka DLP Bank, to finance the purchase of the property and for operating capital.  Mr. Wager started the farm operation in 2019 with two fully functioning houses.  Each house can accommodate approximately 15,000 chickens.  The farm was in continuous operation until late 2021 when the chickens were infected with avian flu.  Only one house was operational from August of 2022 until now.  The result was that the farm could not generate sufficient income with which to make the mortgage payments to DLP.  During the pendency of this case, Mr. Wager has received chickens from Cal-Maine Foods, Inc. and both houses are now operational.

In June, 2023, DLP accelerated the loan and in October DLP filed a foreclosure complaint which sought to foreclose the farm property and to recover damages for breach of contract.  The Debtors filed for Chapter 11 relief to save the property.

## LIQUIDATION ANALYSIS

Value of assets.  The Debtors' liquidation analysis of the net value of their assets, real and personal, as of the date of the petition is attached as "Exhibit 1."  There is no equity in real property.  Total net equity in personal property equity after deducting liens and exemptions is $52,323.51.  $17,000.00 of this total consists of old vehicles, tractors and trailers.  In a Chapter 7, the trustee would likely auction these items.  Given their age and condition, the Debtors estimate that after the auctioneer's commission, net proceeds would be $8,000.00.

The balance consists of financial assets.  There was $5,000.00 owed to the Debtors by Cal-Maine, the provider of the chickens for the farm.  Cal-Maine paid this amount and these funds have been used in the poultry operation.  The other financial asset is a settlement for injuries sustained by Mrs. Wager in a car accident.  The settlement of $32,763.94 was received after the case was filed.  The Debtors have been using these funds for extraordinary non-recurring expenses.  Examples include payment of a $1,000.00 fee to the appraiser who appraised the Debtors' farm and fees for the subchapter V trustee.  The Debtors' 2006 Chevrolet truck recently broke down and the cost of a rebuilt motor is estimated at $6,000.00.  Mrs. Wager needs a medical procedure which will cost $3,000.00.  There are other similar non-recurring repairs and expenses that are needed for the poultry operation.  $5,000.00 of remaining funds from this settlement will be paid to unsecured creditors at the time of confirmation.

Estimated distribution in Chapter 7.  If this case were to convert to one under Chapter 7, the Trustee would have the net proceeds from the auction estimated at $8,000.00.  The Trustee's commission on this would be $1,550.00, leaving $6,450.00.

After deducting other costs of Chapter 7 administration, the Debtors estimate that unsecured creditors might receive $5,000.00.

      <u>Conclusion</u>.  The Debtors' Plan provides a much better outcome for unsecured creditors.  The Debtors will pay $10,000.00 to unsecured creditors, with an immediate distribution of $5,000.00 and the remaining $5,000.00 paid over thirty-six (36) months with pro rata payments starting ninety (90) days from the Effective Date of the Plan.

## PROJECTIONS

      Mr. Wager obtained employment with 7S Ventures in May, 2023 to supplement the family income.  His average monthly net take home is $1,971.09.  Mrs. Wager is employed as a lab technician and her average monthly net take home is $1,776.84.  Their combined monthly net wages average $3,747.93.  The Wagers' household living expenses, not including farm expenses, total approximately $3,385.41.  The Debtors do not anticipate having any excess wage income with which to pay unsecured claims.  The Debtors will use their wage income to pay the secured claims on their home mortgages and the payment to W.S. Badcock.

      Attached hereto as "Exhibit 2" is the Wagers' projection of monthly farm income and expenses.  Debt service is not included.  The projection suggests estimated annual net income before debt service of $73,454.68.  In addition to income from the poultry operation, Mr. Wager usually has annual income from hay of $8,000.00.  This amount can vary depending on the amount of time Mr. Wager has and weather conditions.  Total farm operation income, including hay, is projected at $81,454.68.  This net income will be used to pay secured claims related to farm operations and the $5,000.00 payment to unsecured claims that will be paid over 36 months.  The initial $5,000.00 payment will be distributed from the settlement funds.

**FEASIBILITY**

Payments required by the Plan for farm related secured claims and the remaining unsecured distribution are as follows. The payments to DLP on claim 9 are to be paid semi-annually and the payments to unsecured claims are to be paid quarterly. All payments are shown here as monthly payments for ease in comparing debt service to net income.

| | | |
|---|---|---|
| Class 6 | Sheffield Financial | $43.24 |
| Class 7 | Deere & Company | $151.17 |
| Class 8 | Bradford County Tax Collector | $61.50 |
| Class 9 | DLP Bank | $117.82 |
| Class 10 | DLP Bank | $4,133.86 |
| Class 11 | Unsecured claims | $138.89 |
| Total | | $4,646.48 |

Annual debt service will be $55,757.76. The annual projected net farm income of $81,454.68 should be sufficient to pay this debt service and to provide funds for repairs, maintenance and necessary upgrades to equipment. The Debtors' Plan is feasible.

**DISPOSABLE INCOME**

Section 1191(d) of title 11 defines "disposable income" to be "income received by the debtor and that is not reasonably required to be expended for the maintenance or support of the debtor . . . or for the payment of expenditures necessary for the continuation, preservation or operation of the business of the debtor." The payment which the Plan provides to pay to unsecured claims represents all of the Debtors' disposable income.

**ARTICLE I**

SUMMARY OF PLAN

This Plan submitted under section 1190 of Subchapter V of Chapter 11 of the Bankruptcy Code proposes to pay creditors of Donald Chad Wager and Shelley Jean Wager (the "Debtors") from future income.

This Plan provides for:          nine classes of secured claims;

                                 one class of non-priority unsecured claims.

Non-priority unsecured creditors holding allowed claims will receive distributions which the proponent of the Plan has valued at approximately $0.11 cents on the dollar.  The Plan also provides for the payment of administrative claims.

All creditors should refer to Articles 3 through 4 of this Plan for information regarding the precise treatment of their claims.  **Your rights may be affected.  You should read these papers carefully and discuss them with your attorney.  (If you do not have an attorney, you may wish to consult one.)**

**ARTICLE II**

CLASSIFICATION OF CLAIMS

1.1  Class 1 - Administrative claims - Costs and expenses of administration as defined in the Bankruptcy Code for which application for or allowance of the claim is filed prior to the effective date, as the same are allowed, approved and ordered paid by the Court.

1.2  Classes 2 – 10 - Secured creditors as their claims existed on the date of the petition in this case, as finally allowed and ordered paid by the Court, up to the extent that such claims are not greater than the value of the Debtors' assets, which the Court finds are valid security for such claims.

1.3  Class 11 - Claims of all unsecured creditors of the Debtors excluding the secured portion of claims filed by creditors in classes 2 - 10, who timely file a proof of claim by the claims' deadline of January 22, 2024, as the same are allowed and ordered

paid by the Court. This class also includes claims of unsecured creditors, whether or not a proof of claim is timely filed, but only to the extent that the Debtors listed a claim for such creditor in Schedule E/F and the claim was not listed as contingent, unliquidated, or disputed. The amount of any claim as to which a proof of claim is not timely filed will be limited to the dollar amount scheduled by the Debtors. This class also includes, but is not limited to, creditors whose claims may arise out of the rejection of executory contracts and secured creditors to the extent that the Court finds the same unsecured in whole or in part.

## ARTICLE III

### CLAIMS NOT IMPAIRED UNDER THE PLAN

2.1 Class 1 - Administrative Claims –

(a)   Professional Fees – Prior to the filing of the petition, the Debtors paid a retainer of $10,000.00 to Ruff & Cohen, P.A. $2,880.00 was earned before the case was filed. The remaining $7,120.00 is held in trust. The attorneys will file a fee application for the total owed as of confirmation. To the extent these fees are allowed and ordered paid by the Court, all professional fees will be paid in full prior to the Effective Date of the Plan.

(b)   Subchapter V Trustee Fees - The Debtors have been making interim payments to the subchapter V Trustee. The Trustee will file a fee application. To the extent these fees are allowed and ordered paid by the Court, these professional fees will also be paid in full prior to the Effective Date of the Plan. Any professional fees incurred by the subchapter V Trustee following confirmation of the Plan will be paid in due course as fee applications are filed and approved by the Court.

(c)   Miscellaneous. At present, other than professional fees, there are no unpaid post-petition debts. If there are any post-petition debts in existence at the time of

confirmation, the Debtors will pay such debts according to invoice terms prior to the Effective Date of the Plan.

2.2   Class 2 – <u>U.S. Bank Trust, et al, serviced by Fay Servicing, LLC</u> filed secured claim 16 in the amount of $20,314.02.  This claim is secured by a second mortgage on the Debtor's mobile home and land located at 1890 Eaton Rd, Green Cove Springs, Clay County, Florida.  The claim states that the Debtors had an arrearage of $14.25.  If this amount has not already been paid, it will be paid no later than the Effective Date of the Plan. The Debtors have continued to make the contractual mortgage payments of $231.68 during the term of the Plan and will continue to make these payments following confirmation.  This creditor shall retain its lien on the property until its secured claim is paid in full.  This claim is unimpaired.

2.3   Class 3 – <u>W.S. Badcock Corp.</u> – filed secured claim 1 in the amount of $615.88.  The Debtors' will pay this claim in full by the Effective Date of the Plan.  This creditor will retain its lien on the subject property until its secured claim is paid in full. This claim is unimpaired.

## **ARTICLE IV**

### IMPAIRED CLAIMS

3.1   Class 4 – <u>Athene Annuity and Life Company, c/o Select Portfolio Servicing, Inc.</u> filed secured claim 15 in the amount of $39,129.32.  This claim is secured by a first mortgage on the Debtor's mobile home and land located at 1890 Eaton Rd, Green Cove Springs, Clay County, Florida.  The Debtors have continued to make the contractual mortgage payments of $630.73 during the term of the Plan and will continue to make these payments following confirmation.  The claim states that the Debtors owed an arrearage of $1,380.33 at the time of the petition.  If this amount is not paid by the Effective Date of the Plan, the Debtors will cure this arrearage over a period of twenty-four (24) months with monthly payments of $57.51.  The first arrearage payment will be

due thirty (30) days following the Effective Date of the Plan.  This creditor shall retain its lien on the subject property until its secured claim is paid in full.

3.2   Class 5 – Clay County Tax Collector –filed secured claim 2 in the amount of $281.81 for real property taxes owed on the Debtors' home for 2022.  The Tax Collector's website indicates that this claim is now paid in full.  If it has not been paid in full by the Effective Date of the Plan, the Debtors will pay this amount with 18% interest no later than twelve months following the Effective Date of the Plan.  The Debtors may choose to pay this claim as a lump sum amount by this deadline.  This creditor will retain its lien on the subject property until its secured claim is paid in full.

3.3   Class 6 – Sheffield Financial filed secured claim 8 in the amount of $1,421.26.  This claim is secured by a lien on a 2019 48" Exmark Mower.  The Debtors will amortize the secured claim amount over thirty-six (36) months with 6% interest for monthly payments of $43.24.  The first payment will be due thirty (30) days following the Effective Date of the Plan.  There will be a ten day grace period as to each payment. This creditor will retain its lien on its collateral until its secured claim is paid in full.

3.4   Class 7 - Deere & Company filed secured claim 9 in the amount of $5,190.48. This claim is secured by a lien on a Kubota M-6800 tractor, S/N 68284 with a Kubota LA-1002 loader, S/N 71291.  The Debtors will amortize the secured claim amount over thirty-six (36) months with 3.10% interest for monthly payments of $151.17.  The first payment will be due thirty (30) days following the Effective Date of the Plan.  There will be a ten day grace period as to each payment.  This creditor will retain its lien on its collateral until its secured claim is paid in full.

3.5   Class 8 – Bradford County Tax Collector – did not file a claim but is owed $1,701.21 for 2023 property taxes on the poultry farm located at 5407 86th St SE, Hampton, Bradford County, Florida.  This claim will be paid over thirty-six (36) months with 18% interest for monthly payments of $61.50 each.  The first payment will be due

thirty (30) days following the Effective Date of the Plan.  This creditor will retain its lien on the subject property until its secured claim is paid in full.

3.5  Class 9 – DLP Bank, f/k/a Community State Bank filed secured claim 14 in the amount of $3,717.47.  The Debtors believe that the actual balance is less than the claim amount.  The claim is secured by a lien on a 2006 GMC Sierra.  The Debtors will amortize the allowed claim amount over thirty-six (36) months with 8.77% interest for monthly payments of $117.82.  The first payment will be due thirty (30) days following the Effective Date of the Plan.  There will be a ten day grace period as to each payment. This creditor will retain its lien on its collateral until its secured claim is paid in full.

3.6  Class 10 – DLP Bank, f/k/a Community State Bank filed secured claim 15 in the amount of $535,568.94.  The claim is secured by a mortgage on the 41 acre poultry farm located in Starke, Florida.  The Debtors will amortize the allowed claim amount over thirty years with 8.5% simple interest for estimated semi-annual payments of $24,803.15.  The first semi-annual payment will be due 180 days following the Effective Date of the Plan.  There will be a ten day grace period as to each semi-annual payment and as to the balloon payment.  This creditor will retain its lien on its collateral until its secured claim is paid in full.

3.7  Class 11 - Unsecured Creditors - The Debtor's total unsecured debt is approximately $91,144.62.  A list of the claims which comprise this total, including name and amount owed, is attached hereto as "Exhibit 3."  This list is an initial estimate and the amounts may change.  A final list will be attached to the order confirming the plan.

The Debtor will pay a total of $10,000.00 pro rata, with no interest, to all timely filed, allowed unsecured claims.  $5,000.00 will be paid within ten days of the Effective Date of the Plan.  The remaining $5,000.00 will be paid on a quarterly basis over thirty-six (36) months.  Quarterly payments will be $416.67 each starting on the first day of the month which is ninety days after the Effective Date of the Plan.  There will be a ten day grace period as to each such payment.

## ARTICLE V - EXECUTORY CONTRACTS

Mr. Wager was a party to a Commercial Egg Production Agreement with Cal-Maine Foods, Inc. at the time of the filing of the petition.  This executory contract is assumed.

## ARTICLE VI

### MEANS FOR EXECUTION OF THE PLAN

A.  Funding. Net income from the farm operations will be used to pay secured claims related to farm operations and the $5,000.00 payment to unsecured claims which will be paid over the term of the Plan.  The Debtors' wages will be the source of plan payments for the secured claims of the two mortgage holders on their home.   If necessary, the Debtors may liquidate non-exempt assets to satisfy claims.

B.  Effect of Confirmation.

1.  Pursuant to 11 U.S.C. §1141, all of the provisions of this Plan, if confirmed by the Bankruptcy Court, will bind all creditors of the Debtors, for all purposes, including classification of a claim as secured or unsecured, whether or not the claim or interest of such creditor is impaired under this Plan and whether or not such creditor has accepted this Plan.

2.  Confirmation of this Plan shall vest all of the property of the estate in the Debtors.

3.  Except as otherwise provided in this Plan or in the order confirming this Plan, after confirmation of this Plan, the property dealt with by this Plan shall be free and clear of all claim and interests of creditors, whether such claims are in the nature of consensual liens or involuntary liens, including judgment liens.

4.  Retention of Rights and Powers.  The Reorganized Debtors expressly reserve any rights and powers that the Debtors may enjoy as the Debtors-in-Possession to be utilized after confirmation.

C.  Termination of Service of Subchapter V Trustee.

1.  Consensual Plan.  When the Court confirms a consensual plan under Section 1191(a), the trustee's service terminates upon Substantial Consummation.

2.  Non-Consensual Plan.  When the Court confirms a non-consensual plan under the cramdown provisions of Section 1191(b), the trustee's services shall not terminate until all payments pursuant to the Plan which are to be made during the term of the Plan and Section 1194 are made.  The Debtors will submit such portion of future income from the poultry operation to the supervision and control of the trustee as is necessary for the execution of the Plan.

3.  Dismissal or Conversion.  Termination of the service of the Subchapter V Trustee shall occur upon dismissal or the conversion of the case to another chapter.


## ARTICLE VII - DISCHARGE

A.  Consensual Plan.  If the Debtors' Plan is confirmed consensually under §1191(a), on the Effective Date of the Plan, the Debtors will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in §1141(d)(1)(A) of the Code.  The Debtors will not be discharged from any debt: (i) imposed by this Plan; or (ii) excepted from discharge under §523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

B.  Non-Consensual Plan.  If the Debtors' Plan is confirmed under §1191(b), confirmation of the Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first three years of this Plan, or as otherwise provided in §1192 of the Code. The Debtors will not be discharged from any debt: (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in §1192; or (ii) excepted from discharge under §523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

C.   Creditor Remedies Upon Default.   Should the Debtors default as to any payment required by the Plan, after fifteen (15) days written notice to Debtors and Debtors' counsel, the affected creditor may proceed to use any applicable non-bankruptcy law to recover its claim.   However, should the Debtors file a motion to modify the confirmed plan, the creditor may not proceed with its applicable non-bankruptcy law remedies until and unless the Bankruptcy Court enters a final and non-appealable order denying the motion to modify.

## ARTICLE VIII

### PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

8.1. Disputed claims.   A disputed claim is a claim that has not been allowed or disallowed by a final nonappealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

8.2 Delay of distribution on a disputed claim. No payments or distributions shall be made with respect to any disputed claim or interest unless and until all objections to such claim or interest are resolved and such claim becomes an allowed claim or interest.

8.3. Settlement of disputed claims. The Debtors will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure

8.4 Objection Deadline.  All claims and causes of action in favor of the Debtors, including the authority to object to proofs of claim, are hereby reserved and retained to be prosecuted before and after confirmation.  Unless extended by the Bankruptcy Court, the Debtors will have sixty days from the Effective Date of the Plan by which to file such objections.

## ARTICLE IX - GENERAL PROVISIONS

6.1 - Definitions

1. "<u>Debtors</u>" shall mean Donald Chad Wager and Shelley Jean Wager.

2. "Creditors" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demands or claims of any character whatsoever.

3. "<u>Secured Creditors</u>" shall mean all creditors who hold a lien, security interest, or other encumbrance which has been properly perfected as required by law with respect to property owned by the Debtors.

4. "<u>Plan</u>" shall mean this Plan of Reorganization in its present form or as it may be amended or supplemented.

5. "<u>Court</u>" shall mean the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division, including the United States Bankruptcy Judge presiding in the subchapter V chapter 11 case of the Debtor.

6. "<u>Claim</u>" shall mean a duly listed or timely filed claim which is allowed and ordered paid by the Court.

7. "<u>Effective Date</u>" shall be the first business day following the date that is 14 days after the entry of the confirmation order.

8. "<u>Secured claim</u>" shall mean the claim of a creditor secured by a lien on property in which the estate has an interest equal to either the value of such creditor's interest in the estate's interest in such property, or the total payoff owed to such creditor as of the Effective Date of the Plan, whichever is smaller.

6.2 – <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, such determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

6.3 – <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure), the laws of the State of Florida govern this Plan and any agreements, documents, and instruments executed in

connection with this Plan, except as otherwise provided in this Plan.


Dated: February 11, 2024                    /s/ Donald Chad Wager
                                            Donald Chad Wager



Dated: February 11, 2024                    /s/ Shelley Jean Wager
                                            Shelley Jean Wager


                                            RUFF & COHEN, P.A.
                                            4010 Newberry Road, Suite G
                                            Gainesville, Florida 32607
                                            Telephone No. (352) 376-3601
                                            Facsimile No. (352) 378-1261
                                            Attorneys for Debtors


                                            By: /s/ Lisa C. Cohen
                                                Lisa C. Cohen
                                                FL Bar #558291
                                                lcohen@ruffcohen.com

"Exhibit 1"

## Liquidation Analysis as of Petition Date

### Real Property.

| Description | Value | Equity |
|---|---|---|
| 1) 41 acre Poultry Farm | $550,000 | |
|     Debt to DLP   $535,569 | | $0.00 |
| 2) Mobile home and land | $75,000 | |
|     2 mortgages   $59,443 | | $0.00 |
| Exempt homestead | | |

### Personal Property

### Vehicles and Equipment

| Description | Value | Equity |
|---|---|---|
| 2006 GMC Sierra | $3,000.00 | $00.00 |
|     Debt to DLP   $3,315 | | |
| 2004 Toyota Highlander | $1,000.00 | $1,000.00 |
| 2005 Toyota Sienna | $5,000.00 | $5,000.00 |
| 1991 Chevrolet 1500 | $500.00 | $500.00 |
| 2001 T800 Tractor | $5,000.00 | $5,000.00 |
| 1999 Thor 5th wheel | $500.00 | $500.00 |
| 1987 ASPT 40' log trailer | $3,000.00 | $3,000.00 |
| 1988 Freuhauf flat bed trailer | $500.00 | $500.00 |
| 1988 Crosby gooseneck trailer | $1,000.00 | $1,000.00 |
| 2004 Kubota M-6800 tractor | $4,500.00 | $0.00 |
|     Debt to John Deere   $5,190 | | |
| 2019 Exmark 48" mower | $1,000.00 | $0.00 |
|     Debt to Sheffield   $1,421 | | |
| Slat mover | $500.00 | $500.00 |
| Subtotal | $22,000.00 | $17,000.00 |
| Less exemptions | | ($2,000.00) |
| Net value | | **$15,000.00** |

| Personal items,financial | $1,913.88 | $1,298.00 |
|---|---|---|
|     Debt to Badcock   $615.88 | | |
| Bank accounts | $261.57 | $261.57 |
| [401(k) | 25,510.90 (exempt – excluded from total)] | |
| Payment owed from Cal Maine | $5,000.00 | $5,000.00 |
| Personal injury settlement | $32,763.94 | $32,763.94 |
| Subtotal | $39,323.51 (Non-exempt) | $39,323.51 |
| Less exemptions | | ($2,000.00) |
| Net value personal & financial | | **$37,323.51** |
| Total net value | | **$52,323.51** |

**WAGER FARM**

**12 MONTH PROJECTION WORK SHEET**

Revised

| 2024 YEAR | JAN 15606.48 | FEB 15592.50 | MAR 16830.00 | APR 14830.00 | MAY 13000 | JUNE 10000 |
|---|---|---|---|---|---|---|
| ACE | 930.00 | 150.00 | 100.00 | 150.00 | 50 | 150.00 |
| ADP FEES | 58.00 | 58.00 | 58 | 58 | 58 | 58 |
| ADP PAYROLL | 4765.05 | 4188.44 | 4188.44 | 4188.44 | 4188.44 | 4188.44 |
| CELL PHONE | 68.00 | 68.00 | 68 | 68 | 68 | 68 |
| DIESEL | 607.04 | 400.00 | 400 | 600 | 800 | 600.00 |
| FARM ARLARM | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 | 120.00 |
| FARM INSURANCE | 745.14 | 745.14 | 1094.53 | 1094.53 | 1094.53 | 1094.53 |
| GA POULTRY | 533.72 | 100.00 | 300.00 | 800.00 | 0 | 200.00 |
| GAS | 36.63 | 75.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| JDF TRACTOR Deere & Company | 0 | 0 | 0 | 0 | 0 | 0 |
| LAND TAX Future | 158.00 | 158.00 | 158.00 | 158.00 | 158.00 | 158.00 |
| LIGHT | 468.30 | 800.00 | 1000.00 | 1300 | 1000 | 1400 |
| MWI | 0 | 0 | 500.00 | 500.00 | 100 | 500.00 |
| PORTA POTTY | 0 | 0 | 125.00 | 125.00 | 125. | 125 |
| SHEFFIELD LAWN | 0 | 0 | 0 | 0 | 0 | 0 |
| TRACTOR SUPPLY | 930.79 | 200 | 100 | 200 | 100 | 100.00 |
| TRUCK PAYMENT | 0 | 0 | 0 | 0 | 0 | 0 |
| Expenses | 9420.67 | 7062.58 | 8227.84 | 9467.44 | 7967.44 | 8867.44 |
| Gross | 15606.48 | 15592.50 | 16830.00 | 16830.00 | 13000 | 10000 |
| Expenses | 9420.67 | 7062.58 | 8227.84 | 9467.44 | 7967.44 | 8867.44 |
|  | 6185.81 | 700 / 8529.92 | 8602.16 | 7362.56 | 5032.56 | 1132.56 |

"Exhibit 2"

WAGER FARM
12 MONTH PROJECTION WORK SHEET

| 2024 YEAR | JULY | AUG | SEPT | OCT | NOV | DEC |
|---|---|---|---|---|---|---|
| | 14080 | 16830 | 16830.00 | 16830.00 | 15840 | 15840.00 |
| ACE | 100.00 | 150.00 | 150. | 25 | 100 | 100. |
| ADP FEES | 58 | 58 | 58 | 55 | 58 | 58 |
| ADP PAYROLL | 4188.44 | 4188.44 | 4188.44 | 4188.44 | 4188.94 | 4188.94 |
| CELL PHONE | 65.00 | 68.00 | 68.00 | 68.00 | 68.00 | 68.00 |
| DIESEL | 700 | 700 | 600 | 600 | 500 | 500.00 |
| FARM ARLARM | 120 | 120 | 120 | 120 | 120 | 120 |
| FARM INSURANCE | 1094.53 | 1094.53 | 1094.53 | 1094.53 | 1094.53 | 1094.53 |
| A POULTRY | 600.02 | 200.00 | 200.00 | 600.02 | 600.02 | 600.00 |
| AS | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| JF TRACTOR Deere Company | 0 | 0 | 0 | 0 | 0 | 0 |
| LAND TAX Kubota | 158.00 | 158.00 | 158.00 | 158.00 | 158.00 | 158.00 |
| LIGHT | 1300 | 1500 | 1500.00 | 1500.08 | 1500.00 | 1500.00 |
| MWI | 400.00 | 400.00 | 500.00 | 200.00 | 500.00 | 500.00 |
| PORTA POTTY | 125 | 125 | 125 | 125 | 125 | 125 |
| SHEFFIELD LAWN | 0 | 0 | 0 | 0 | 0 | 0 |
| TRACTOR SUPPLY | 150.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 |
| TRUCK PAYMENT | 0 | 0 | 0 | 0 | 0 | 0 |
| Expenses | 9167.44 | 9267.44 | 8767.44 | 8792.44 | 9217.44 | 9149.44 |
| Gross | 14000 | 16830.00 | 16830.00 | 16830.00 | 15840.00 | 15840.00 |
| Expenses | 9167.44 | 9267.44 | 8767.44 | 8792.44 | 9217.44 | 9149.44 |
| | 4833.56 | 7562.56 | 7862.56 | 7837.56 | 6622.56 | 6670.56 |

Revised

"Exhibit 3"

Unsecured Creditors to be paid in Class 11

Creditor and source of claim                                      Claim Amount

1. AAA Event Services (Sch E/F) ..................................... $883.13
2. Bradford Garbage Service (Sch E/F) .......................... $2,100.00
3. Citibank Home Depot (Sch E?F) ............................... $1,587.00
4. Credit One Bank (Sch E/F) ......................................... $172.00
5. Fleming Island Surgery Ctr (Sch E/F) .......................... $500.00
6. May Hugh's Medical Equipment (Sch E/F)............... $1,100.00
7. UF Health (Sch E/F) ............................................... $14,000.00
8. Discover Personal Loans (claim #3) ........................ $30,262.51
9. Capital One, N.A. (claim # 4) ..................................... $783.88
10. Discover Bank (claim #5) ....................................... $14,700.64
11. Discover Bank (claim #6) ....................................... $12,758.38
12. Portfolio Recovery Assoc. (claim #7)........................ $3,885.05
13. John Deere Financial, f.s.b. (claim #10) ..................... $5716.56
14. Synchrony Bank (claim #11)..................................... $1,269.70
15. Capital One Bank (USA), N.A. (claim #16) ................. $990.18

Total........................................................................... $91,144.62